CASES ARGUED AND DETERMINED

IN THE

SUPREME COURT OF MISSISSIPPI

AT THE

OCTOBER TERM, 1911.

JOHN D. GWIN ET AL. *v.* MRS. ROSALIND GWIN HUTTON.

[56 South. 446.]

WILLS. *Construction. Validity.*

    A will, after providing for the payment of the testator's debts and certain bequest, left the balance of the estate in trust to the two sons of the testator as executors, to be managed by them during their natural lives, for a period not exceeding twenty-five years, for the joint benefit of themselves, the other children and the widow of the testator. Another section of the will provided that at the death of both the executors, but not later than twenty-five years from the death of the testator, the trust should be terminated, and all property then on hand divided between the testators widow and children share and share alike; a deceased childs heir to take his ancestors portion. *Held,* that the courts cannot authorize any partition of such estate. To do so would be to destroy the will of the testator and possibly take away from future contingent beneficiaries an estate which the testator gives them and which they would get if his will was allowed to stand and be executed as he directs that it shall.

(320)

2. SAME.

> Under such a will until the trust created thereby is terminated, no title vests in any of the beneficiaries. Whether they will ever have any title or not is contingent upon whether or not they are living when the trust is terminated.

APPEAL from the chancery court of Holmes county. HON. J. M. McCOOL, Chancellor.

Bill by John D. Gwin et al., as executors of the will of S. D. Gwin against Mrs. Rosalind Gwin Hutton et al. From a decree dismissing the bill, petitioners appeal.

S. D. Gwin died in Holmes county, Mississippi, in 1908, leaving a last will and testament, and naming as. the joint executors thereof his two sons, John D. and Walker K. Gwin. The executors proceeded to the administration of the estate, and executed all bequests, and managed the property in accordance with the terms of the will, which provided in section 4 that: ''The balance of my estate, real and personal and mixed, in possession and expectancy after the payment of all my liabilities, and the above bequests shall remain in the charge, possession, and control of the said John D. Gwin and Walter K. Gwin and the survivor of them during their natural lives for a period not exceeding twenty-five years .from my death, to be by them or the survivor managed, operated, and controlled for the benefit of themselves, and of my wife and my other children, and for the carrying out of the bequests and purposes hereinafter named. The said John D. Gwin and Walter K. Gwin, or the survivor, shall have full power and authority to manage, operate and conduct any estate and various enterprises, to make all proper and necessary contracts for the operation, management, and conduct of same, including the power to borrow money, and to secure the repayment thereof by pledge or mortgage of my property, real, personal, and mixed. They or the survivor shall have the power to lease, sell, and by deed or other instrument to convey for cash or otherwise any of my estate, real, personal, or

mixed, reinvest the proceeds of said sale or sales, or any part thereof, and the income of said properties or my estate after paying the specific amounts hereinafter named, in any way they or the survivor sees proper for the use and benefit of my estate.'' Besides the appellants, the decedent left four other children (the appellees), all of whom are adults, and a wife, to whom he left a comfortable annuity, or a child's share, if she should so elect. Section 7 of the will is as follows: ''At the death of both the said John D. Gwin and Walter K. Gwin, but not later than twenty-five years from my death, it is my will that my estate and the trusts hereby created be closed up as soon as practicable, and all the property then on hand, including the accumulations whilst in the hands of my executors, be divided between my wife and children, share and share alike, a deceased child's heir to take a deceased child's portion.''

After continuing the operation of the estate for more than two years, the children of the decedent mutually agreed to a partition of the estate, agreeing that the annuity in favor of their mother, which she had elected to take, should remain a charge on their respective shares, and a written agreement was drawn up, and signed by all of them. The executors agreed to the partition, but doubting the legality of such an arrangement, filed a bill in chancery, making the other heirs parties defendant, and asking a construction of the will and determination of the rights of the parties. The chancellor, in construing the will, held that each child living at the death of the testator became vested ''with an equitable estate in fee during the continuance of the trust, and on its termination with a legal title in fee simple,'' and that the heirs of the deceased child, referred to in item 7 of the will, ''would take by limitation or descent, and not by purchase directly under the will.'' The chancellor held, further, that the children, all being adults, could agree to a termination of the trust and partition of the property.

From a decree dismissing the petitioner's bill, an appeal is taken.

*Alexander & Alexander,* for appellants.

It is not doubted that a trust can be terminated by consent of the beneficiaries if all who have a present or future interest consent. 28 Am. and Eng. Ency. of Law (N. Ed.), 953.

The real question is whether there is a contingent future interest in the "heirs" of the children of Captain Gwin who may be or become such "heirs" before the termination of the trust as will prevent a voluntary termination of it and partition of the estate.

Or, to state the question differently, if one of the children of the testator should die before the expiration of the trust, would the "heirs" of the one so dying take the parent's share by purchase under the will or by limitation? Or, to state the question in still another form, do not the children of Captain Gwin take each a fee simple share (subject only to the trust), since the only provision on this subject is that "a deceased child's heirs shall take the deceased child's part?" The chancellor held that the children took during the trust an equitable estate in fee; that the word heirs was a word of limitation and the children, all being adults, could by unanimous consent terminate the trust and partition the estate.

It is too well settled to need citation that a deed or devise to a person named and his heirs gives the person the fee. Indeed, the ordinary form of deeds to one in fee simple from time immemorial has been to the person and his heirs.

Very early the English common law, and long before the rule in Shelley's case, a conveyance to a person and his heirs passed the fee to the person named. If words of inheritance were omitted the fee would not pass. It is true that some question has been raised at a very early

period of English history whether or not a conveyance
to A and his heirs would be construed as a life estate in
A with remainder in the heirs, but such contentions had
long been abandoned, and deeds and devises to a person
and his heirs passed the fee long before the adoption of
the rule in Shelley's case. This rule was adopted to
meet cases where there was a deed or gift to one ex-
pressly for life with remainder to his heirs, and the
court by process of reasoning, not necessary here to dis-
cuss, announced the rule in Shelley's case, that under a
deed or gift to one for life with remainder to his heirs,
the word "heirs" was a word of limitation and the per-
son who but for the rule would take a life estate took the
fee.

Our opinion is, and we so advised the trustees in this
case, that the rule in Shelley's case had no application
because here there is no devise to the children of Cap-
tain Gwin for life with remainder to the heirs. If the
court thinks differently and further thinks that the rule
in Shelley's case finds application here, we cite it to a
most elaborate note on the rule in Shelley's case con-
tained in 29 L. R. A. (N. S.), page 963.

The point we now make, viz., the rule in Shelley's case
has no application because there is no gift of a life
estate involved, is discussed and a distinction clearly
drawn on pages 1008-1009 of the note referred to.

The real and only question, we think, is whether sec-
tion 2776, Code 1906, applies to this will. That section
is as follows:

"2776 (2446). The rule in Shelley's case abolished.
A conveyance or devise of land or other property to any
person for life, with remainder to his heirs or heir of
his body, shall be held to create an estate for life in
such person, with remainder to his heirs or heir of his
body, who shall take as purchasers, by virtue of the
remainder so limited to them."

If by any sort of construction the will in question can
be said to give to the children of Captain Gwin only a

life estate, then the use of the word "heirs" would be held to give the heirs a remainder after the life estate.

It seems to us, and we so advised the trustees, that if this section of the Code applies, their agreement for a partition is illegal and the trust must continue. But, the sole purpose of the code section, it seems, was to abolish the rule in Shelley's case in Mississippi. The rule in Shelley's case had no application unless there was a gift to one for life with an attempted remainder to his heirs, and so the Code section applies only where there is a gift for life with remainder to heirs. Under the will of Captain Gwin, his children took from the estate immediately upon his death. There was no postponement of their interest to a future date, no intervening estate in another. It is true possession and control of the estate in the children was postponed pending the trust. The control and management of the property went for a period to the trustees, but there was no life estate in the property in the trustees with remainder to the children. The beneficial interest and the enjoyment of the estate was instantly by the will invested in the children of Captain Gwin, the income, whether accumulative or distributive, belonged immediately to the children during the trust, and they were the equitable owners of the fee, so to speak. On the termination of the trust they took possession and control of what they already enjoyed beneficially. The rule in Shelley's case applies only where there is intended to be successive ownership, the life tenant owning and enjoying the estate for life, and then after his death the remainderman taken the entire estate. Here there is no termination of any estate on the death of anyone. There is a termination of possession—a termination of trust, in the trustees upon their death. But there is no devise of this property to the two trustees to have, use and enjoy so long as they live with the remainder to the children of Captain Gwin. The death of the trustees is only mentioned as terminat-

ing the trust, and not as affecting ownership or enjoyment of the estate. Again, the death of the trustees which, under the will, if to be given any effect at all, must take place before the end of twenty-five years. There is no vesting of the title in trust in John D. and Walter K. Gwin for life, no attempt to give them even possession and control for life, but mere provisions that the possession for purposes of administration of the trust shall terminate in twenty-five years and sooner if both the trustees die. Clearly this does not bring this devise within the rule in Shelley's case, so that our statute abolishing it would have application.

*D. T. Ruff,* for appellee.

The item of the will of Captain S. D. Gwin, which raises the question at issue in this case, is set forth at length in the brief for appellants. The reason for the partition of the estate as sought by the appellees is also correctly stated therein, to which we refer the court.

With reference to the question raised by item 7 of the will, the contention of the appellees is that the agreement to a partition of the estate of Captain S. D. Gwin, as made by and between his children and Mrs. Gwin, is the agreement and consent to said partition by all the beneficiaries who have either a present or a future interest therein; and that said agreement of itself terminates the trust created by the will. See 28 Am. and Eng. Ency. of Law, p. 953.

The rule in Shelley's case has no application here, because the devise to the children of Captain S. D. Gwin, the testator, was clearly not intended to convey a life estate to them, with remainder to their heirs, but simply an expression of the testator's desire, that in the event of the death of any of the beneficiaries under the will, the heir or heirs of said beneficiaries would take as under our laws of descent. This very question is fully discussed in 29 L. R. A. (N. S.), pp. 1008-1009.

Section 2776, of the Code of 1906, does not apply to this case, for the reason that by no logical construction can this conclusion be reached, that it was the intention of the testator to give only a life estate to his children, the remainder to their heirs. Much less was there any intention to vest a life estate in the trustees themselves, because whether or not the trustees were dead, the trust under the terms of the will was to terminate *ipso facto* upon a fixed and certain date. Besides, the very nature of the trust precluded the idea of a life estate in the trustees. They were to hold, control and manage the estate, not for themselves or their benefit, but for the benefit of others, to wit, the beneficiaries under the will.

MAYES, C. J., delivered the opinion of the court.

The courts cannot authorize any partition of this estate. To do so would be to destroy the will of the testator, expressed in language which leaves no doubt of his intent, and possibly take away from future contingent beneficiaries an estate which the testator gives them, and which they would get if his will was allowed to stand and be executed as he directs that it shall. The will can be carried out as the testator directs that it shall be, without violating any statute or other rule of the law that would make any of its provisions invalid. Courts may help execute wills, but they have no power to make wills. Under section 7 the trust created by the will may last for not longer than twenty-five years; but it may terminate in much less time should both of the executors die before the expiration of that time. Until the trust created by the will is terminated, no title vests in any of the beneficiaries. Whether they shall ever have any title or not is entirely contingent upon whether or not they are living when the trust is terminated. The beneficial use of the estate is given to the beneficiaries named therein during the continuance of the trust. The title is vested in the trustees, in order to enable them to carry

out the will during the time fixed by the will for the continuance of the trust.

Section 7 of the will provides that when the trust is terminated, and only at that time, "all the property on hand, including the accumulation whilst in the hands of my executors, be divided between my wife and children, share and share alike, a deceased child's heir to take a deceased child's portion." We see that under section 7 of the will no title becomes vested in any of the beneficiaries until the happening of the contingency. The reporter is directed to publish such parts of the will and other pleadings in this cause as are necessary to fully state the case.

The decree of the chancellor having been the reverse of this holding, the judgment is reversed, and bill dismissed.　　　　　　　　　　　　　　　　*Reversed.*