JONES, Justice:
Mr. Sam E. Broadhead died February 6, 1965. On February 12, 1965, the Chancery Court of Lauderdale County admitted to probate his will reading as follows:
One-half of all my property goes to my beloved wife, Virdie Cox Broadhead, in trust so she may be secure in its income and benefits for her life. She alone is to determine what is to be done with the income or benefits, and her decision will be final. She alone is to determine what shall be done with the property on her death, and her decision will be final.
The remainder of all my property goes in equal shares to our five children (S. Norris, Dolly Carlene, Paul E., Annette and Shirley) in trust so that they shall have its income and benefits and provide for the heirs of their bodies.
None of my property may be used for engaging in a business requiring or using hourly pay scale employees, or inventory purchased for resale. All the property which I have accumulated should be held together and not broken up, except as to my wife.
Our sons, S. Norris Broadhead and Paul E. Broadhead shall serve as executors hereof, without charge and without bond. When this trust has been established, and meets with approval of the Court having jurisdiction, and their final account approved by the Court, they are to be discharged as executors without personal liability. If they be trustees of the trust, they ought to be allowed salary, but not commission, or profit. A married man needs about double that of a single man.
There is attached a draft of my plans for such a trust as provided, and I recommend it as a guide. I have initialled each of its pages. Any other will is hereby revoked. (Emphasis added).
At the same time the will was probated, the form of the trust was also admitted to probate as a part of the will. On February 18, 1965, the chancery court recited in its decree that the decedent’s will “further provides that there be a trust for the handling of deceased’s property by trustees to be appointed by the court * * * ” and the deceased further provided therein “ * * * a form of trust desired by him and signed the same.” In said decree, the court established the trust and named the two sons, S. Norris Broadhead and Paul E. Broadhead, Jr. as trustees.
The question to be decided on appeal is whether the trust is valid, and, if so, do the grandchildren have an interest in the estate under the terms of the trust.
It is argued that the words of the will where it attaches a draft of the testator’s plans for the trust and recommends it as a guide is precatory and not mandatory, and being precatory, the trust is void and amounts to nothing.
In 95 C.J.S. Wills § 602, pp. 800-802 (1957), it is said:
The effect to be given particular language of a will may depend on whether it is precatory or mandatory. Words in a will which are merely expressive of a desire or intention on the part of the testator, and are merely advisory or prec-atory in character, may be useful in resolving doubts in other parts of the will; but, generally, the use of such words has no legal effect in the absence of supporting language elsewhere in the will, and they do not impose an obligation *781 which can be enforced by the court. Thus, they do not control the action of the court in matters within its discretionary power, or add anything to the liability of the testator’s estate for his debts, when used in connection with their payment. They do not amount to a testamentary disposition, or control or alter express dispositions in the will, unless it is apparent that it was the testator’s intention that such words of desire or intention should be mandatory, and then only to the extent fixed by the testator’s dominant purpose. * * *
b. Whether Precatory or Mandatory
In determining whether particular words are to be construed as precatory or mandatory, the court will look to the expressed intent of the testator, as found from the context of the will and surrounding circumstances; and words which, in their ordinary meaning, are precatory will be construed as mandatory only when it is evident that such was the testator’s intent.
Whether words in a will are to he construed as mandatory or as merely preca-tory is not always solely determinable by the nature of the words themselves, but the court will look to the expressed intention of the testator, as found from the context of the will, taking into consideration the surrounding circumstances, including the testator’s relationship to the beneficiaries and the nature of the estate devised. Although words expressing merely a suggestion, wish, or request ordinarily are of a precatory character only, words which, in their ordinary and primary meaning, are precatory may be mandatory in their dispositive effect, when, and only when, it is evident from the context and the surrounding circumstances that such was the testator’s intent. Likewise, whether words ordinarily treated as mandatory may be given a precatory effect depends on the ascertainment of the testator’s intent with respect thereto.
Where words of recommendation, request, desire, and the like are used in direct reference to the disposition of the testator’s own property and show a clear intent to make such disposition without the intervention of any act by the first donee, they are ordinarily regarded as imperative and testamentary rather than precatory, even though the testator declares his wish to be executed only on the happening of a contingency which may never happen. (Emphasis added.)
A majority of the Court is of the opinion that the will manifests the testator’s intent that the words relative to the form of the trust (attached to the will), be mandatory, and that the form of the trust was properly admitted to probate and the trust established.
The only testimony as to the nature of the estate was that it consisted principally of lands in four or five different states. It was certain from the will that the decedent desired the estate to be held together. The trust also shows it was his desire and intent that said estate be held together and owned by his children until the death of his wife and youngest child, unless termination should sooner be permitted. It was provided that, after the trust had been in existence for ten years, the court, on petition, might terminate it. The ten years has not yet expired. The nature of the estate, the surrounding circumstances, and the intent and desire of the testator, justify the conclusion that the only way his intent could be followed was by the execution of the aforesaid trust. The trust itself made various provisions for the continuance thereof and for the maintenance of the property and the ownership thereof by his children. Section 23 of the trust provided as follows:
Should any beneficiary die before termination of the trust, the interest of that beneficiary shall be allocated, share-and-share-alike, among the surviving beneficiaries and an appropriate settlement in money shall be made for benefit of the *782 heirs of the body of such deceased beneficiary but for no other person. This does not apply to the one-half of Virdie Cox Broadhead.
The testator was conscious of his grandchildren, and, as shown by the will, desired them provided for.
It seems that from the beginning the daughters had been dissatified by the arrangements made by their father and there was, from the opening of the will, expressed animosity by the sisters toward the brothers and their attorneys.
On or about April 22, 1968, an agreement was made between the sisters and brothers, all adults, in which they, for themselves, for the grandchildren, and those yet unborn, undertook to agree upon a settlement under the terms of which the trust would be discontinued insofar as the sisters and grandchildren were concerned.
The proof shows that the agreement was made between the attorneys and the adults and that there was nobody representing the minors, save the adults being the parents of said minors and whose interests, as shown by Section 23 of the trust agreement, were adverse to the minors. This agreement provided for the payment of the sum of $300,000 to each of the daughters with a provision that five percent thereof ($15,000) should be paid into a separate trust by each daughter for eventual disposition to the grandchildren to take care of the interest of each.
It is not shown how the amount of $15,000 was ascertained, but it was shown by the record that the lawyer for some of the adults submitted the figure of five percent or $15,000 with no statement or explanation as to how that figure was reached and that the amount was inserted in the blank provided therefor.
Thereafter a bill was filed in the chancery court asking that the said settlement be approved and the minors and three daughters being paid as aforesaid be declared to have no further interest in said trust.
At the hearing there was no evidence whatsoever as to the value of the estate. One of the trustees testified that he did not know, and nobody seemed to know. It is apparent that this value should have amounted to a great deal of money since the three daughters were to be paid, under the agreement, a total of $900,000. Their lawyer testified that he did not know the value of the estate, but he did say he had some ideas that made it advantageous to his clients to settle. The chancellor, after hearing the evidence, held that the minors had no interest in the estate, or if they did have, that the amount to be paid to or for them was in excess of the value thereof.
This finding was made, as aforesaid, without any proof of the value of the estate and upon an agreement made by those for the minors whose interest was adverse or might be adversed to theirs.
The question presents itself as to whether the minors had an interest in the estate under Section 23 hereinbefore quoted. We hold that they had a contingent remainder interest, which interest in the event of the death of a parent, should be paid to him in an appropriate sum of money. It is argued that this is indefinite.
However, the word appropriate means fitting and proper, and fitting and proper compensation for the grandchild’s loss of his parent’s interest in the trust would be the fair market value thereof. In fact, the trust itself gives credence to this claim when it says in paragraph 6: “ * * * in event of dissolution, the Trustee shall have the right to settle in money, at fair market value of the property, in lieu of such property.” (Emphasis added).
 We hold that the minors had an interest and that the time for the determination of what “an appropriate settle- *783 men in Money” means is when and if the contingency happens.
We think the lower court was in error when it held that the minors had no interest and that there is no proof in this record sustaining the court’s finding that the five percent exceeded whatever interest the minors might have. Further, there was no proof in the record as to the age, health, or life expectancy of the parents, and under these circumstances, the majority cannot approve a settlement made for minors living and unborn where the proof of value is absent and the agreement made for them by persons with possible adverse interest.
The case is reversed and the petition dismissed.
Reversed and petition dismissed.
RODGERS, BRADY, PATTERSON and INZER, JJ., concur.
ETHRIDGE, C. J., GILLESPIE, P. J., and SMITH and ROBERTSON, JJ., dissent.