946 So.2d 417 (2006)
In the Matter of the LAST WILL AND TESTAMENT OF Eunice McSWAIN, Deceased.
Martha Shows, Appellant,
v.
Katheryn Jane McSwain Polk, Elizabeth Ruth McSwain Hughes, and Eunice Charlene McSwain, Appellees.
No. 2005-CA-00943-COA.
Court of Appeals of Mississippi.
December 12, 2006.
*418 William L. Ducker, Purvis, attorney for appellant.
John Brian Jones, Jackson, Robert T. Jackson, Hattiesburg, attorneys for appellees.
Before MYERS, P.J., SOUTHWICK and BARNES, JJ.
SOUTHWICK, J., for the Court.
¶ 1. The Chancery Court of Forrest County struck a provision in a will as void for uncertainty. A beneficiary of that provision appeals. We disagree that the language is void for uncertainty and remand for further proceedings.

FACTS
¶ 2. Eunice McSwain died in May 2004. Her will distributed real and personal property to various family members who are appellees today: Katheryn Jane McSwain Polk, Elizabeth Ruth McSwain Hughes, and Eunice Charlene McSwain. In addition, Article IV of the will stated this:
I fully recognize that my well being over the last few years has been accomplished through the efforts of caretakers who have provided around the clock attention to my creature comforts and companionship with one major contributor to this purpose, namely, MARTHA SHOWS, who has gone far beyond the call of duty in providing for my comfort and welfare, therefore, I hereby give devise and bequeath and direct that the Judge of competent jurisdiction over the administration of my Estate make a fair contribution of cash assets that may be remaining from my Estate to the said caretakers then providing said services to me, and, in particular the said MARTHA SHOWS who has always shown an unselfish loyalty to my personal welfare and well-being.
¶ 3. Martha Shows was a caretaker who worked for McSwain from October 1998 until McSwain's death in 2004. McSwain's will was drafted by her lifetime friend and a local attorney, Davis Fortenberry, who was named in the will as executor of her *419 estate. In December 2004, Fortenberry filed a first annual and final account for the estate. In his filing, he requested that the chancellor give direction "as to what steps should be taken by him in order to comply with the provisions" regarding the caretakers. The other beneficiaries under the will argued that Article IV was void for uncertainty and that Shows and the other caregivers should receive nothing.
¶ 4. A hearing on this provision occurred in March 2005. Shows testified that she spent a significant amount of time with McSwain during these years, and that the two had developed a very close relationship even to the point that McSwain shared information with Shows regarding her finances. Shows testified that the salary she received for her round-the-clock care was approximately $1,344 per week, or about $70,000 per year. Shows paid other caretakers some of this money, but Shows testified that she was the primary caretaker. Three other caretakers testified at the hearing, all of whom indicated that they had been hired by Martha Shows.
¶ 5. Fortenberry testified as to the genesis of this contested provision. He offered McSwain's July 2003 handwritten note stating that she desired for "the caretakers" to receive the residue of her estate. Fortenberry testified that he convinced McSwain that such a provision in her will would invite a will contest. He convinced McSwain to include the provision that we review today, directing the judge of the court in which the will was probated to compute a satisfactory cash bequest for Shows and other caretakers. McSwain's last will and testament was duly executed in August 2003, a little over a month after the date of the handwritten note and nine months before her death. The note constitutes parol evidence as to the meaning of the provision, but it has no other significance.
¶ 6. In his final judgment of April 2005, the chancellor found this provision in McSwain's will to be void for lack of certainty. "While it is clear to this Court that Ms. McSwain intended to leave a bequest to Martha Shows and the other medical workers who cared for her during her last illness, she left absolutely nothing to indicate exactly how much of her estate she intended to give." He added that, in construing the testator's intent, the court is limited to the "four corners of the will." He concluded by noting that, although it is the duty of the courts to carry out the intent of the testator, it is impossible to do so "without some guidance as to what those wishes are."
¶ 7. Shows appealed and the cause has been deflected to this Court. We ordered supplemental briefing on the power of appointment issue we discuss below.

DISCUSSION
¶ 8. In a will contest, the chancellor's findings will be upheld unless they are manifestly wrong, constitute an abuse of discretion, or result from application of an erroneous legal standard. Estate of Grantham v. Roberts, 609 So.2d 1220, 1223 (Miss.1992). The findings should be based upon substantial, credible evidence. Estate of Grubbs, 753 So.2d 1043, 1046 (Miss. 2000).
1. Validity of Testamentary Provision
¶ 9. We find no doubt, nor did the chancellor, that McSwain intended to leave a bequest of some amount to Shows and to other caregivers. The issue for us is whether the means by which the will stated this intention was ineffective because of uncertainty.
¶ 10. The operative language in the will was that "I hereby give, devise, bequeath *420 and direct that the Judge of competent jurisdiction over the administration of my Estate make a fair contribution from the cash assets that may be remaining from my Estate to the said caretakers then providing said services to me, and, in particular, Martha Shows. . . ." The difficulties, but not necessarily the defects, of this language are to identify the class of beneficiaries, the amount of the bequest, and the effect of giving discretion to a chancellor. In addition to Shows, perhaps two or three other people would qualify in the class. No amount is stated. The effect of granting such authority to a chancellor will be reviewed only after first discussing the provision as if someone besides the chancellor, such as the executor, was given this exact authority.
¶ 11. Judicial interpretation of a last will and testament requires a determination of and a respect for the intent of the testator. Estate of Blount v. Papps, 611 So.2d 862, 866 (Miss.1992). A will may contain within itself all the needed evidence of its meaning. Id. If ambiguity exists, parol evidence is admissible. Id. The chancellor found McSwain's Article IV not only to be ambiguous as to the amount of the bequest to caregivers, but to have used language that would prevent enlightenment from other sources. The very nature of the bequest"a fair contribution" emptied the grant of the possibility of judicially ascertainable standards.
¶ 12. The chancellor found the provision irretrievably flawed because of the principle that courts cannot guess at the intent of a testator. For example, in one precedent a will codicil was invalid for fatal ambiguity when it stated, "I want the few acres of land on South side of road to go to my brother," and there was no parol or other evidence as to which road and which tract was intended. Hemphill v. Robinson, 355 So.2d 302, 304 (Miss.1978).
¶ 13. We look at the McSwain provision from a different perspective. What was done with certainty was to name a person who had the power to decide amount and recipients. The testator's intent is actually quite clearthere is a grant of discretion to a specific person to decide on the completion of a bequest to the caregivers. According to the attorney who drafted the will, an exact amount for the bequests was not set because of the dwindling of her cash assets in the years immediately before execution of the will. The attorney told McSwain that she might "want the Judge to make that determination because we do not know what your financial situation will be as far as cash assets are concerned." Since the provision was for the benefit of those who would provide care to the testator as her life came to a close, it may have been natural not to want to identify the individuals who might after the will's date become significant in her care. Instead, only one person about whom the testator was certain was named. What was "fair" remained to be seen. What was fair also remained to be determined by someone else.
¶ 14. This kind of provision may validly create a power of appointment. King v. King, 234 Miss. 862, 868, 108 So.2d 220, 222 (1959). If the recipient of the power, known as the donee, does not receive an interest in the property that is the subject of the power, the grant is considered to be of a "naked power," as opposed to a "power coupled with an interest." THOMPSON ON WILLS § 391, at 585 (3d ed. 1947). A naked, or bare, power is "simply collateral and without interest, and is such as may be given to a stranger for the purpose of disposing of property." Id.
¶ 15. The power granted here, which was the authority to make a gift to the class of individuals who cared for the testator, has been enforced in other jurisdictions. *421 One of the Restatements summarized caselaw in the specific circumstances of grants to caregivers:
When the group of objects consists of persons who have rendered some form of care or service to the donor, the power has ordinarily been upheld if such persons are ascertainable. Lear v. Manser, 114 Me. 342, 96 A. 240 (1916) (bequest "to such person or persons, or to such institution as shall care for me in my last sickness" as the executor should select valid because beneficiaries readily ascertainable); Moss v. Axford, 246 Mich. 288, 224 N.W. 425 (1929) (power in executor to appoint residuary estate in favor of "the person who has given me the best care in my declining years and who in his opinion is the most worthy of my said property" held valid because testamentary language sufficiently clear to enable court to identify the beneficiary); Smoot v. McCandless, 461 S.W.2d 776, 74 A.L.R.3d 1061 (Mo.1970) (power granted executor to appoint residuary estate in favor of "the person or persons who care and look after me and provide me with a home and the comforts of life during my declining years" valid because group of objects sufficiently definite and persons therein sufficiently ascertainable). Compare In re Umberger's Estate, 369 Pa. 587, 87 A.2d 290 (1952) (will devising real property "to whoever takes care of me in my last illness or old age at the discretion of the executor" held not intended to include two women who tended deceased for only a few hours before her death). Contra: In re Long's Estate, 190 Wash. 196, 67 P.2d 331 (1937) (power in executor to appoint one-half of estate in favor of "that person, or those persons who shall have rendered to me the greatest service in my declining months or years" void for indefiniteness). See generally G. BOGERT, TRUSTS AND TRUSTEES § 161 (2d rev. ed. 1979).
RESTATEMENT OF THE LAW, SECOND, PROPERTY (DONATIVE TRANSFERS) § 12.1 (1986).
¶ 16. The one precedent cited above by the Restatement which was thought to be contrary to these principles, still found that the controlling law was that "a bequest, which leaves to the executor the right to select the beneficiary," is valid if the courts can find the testator's intention. In re Long's Estate, 67 P.2d at 332. Whether this cited case is actually contrary or just distinguishable we need not decide, as we conclude that the remainder of the cited precedents are persuasive.
¶ 17. A lengthier collection of cases summarized various precedents as holding that creating a class of beneficiaries such as "friends" was too indefinite, but directing the donee to provide to "persons rendering some form of care or service to the testator," is generally enforceable based on parol evidence that identifies the beneficiaries. J.R. Kemper, Annotation, Validity of Testamentary Provision Making Gift to Person or Persons Meeting Specified Qualification and Authorizing Another to Determine Who Qualifies, 74 A.L.R.3d 1073, 1075 (1976).
¶ 18. The discretion of the donee of the McSwain power was limited. The donee could give "a fair contribution" to those "caretakers then providing such services to me," which in the context of a will which only becomes effective at death would appear to be only those caretakers still employed in her care around the time of her death. A person granted authority in a will to distribute certain property to a particular class of persons is deemed to be a donee with a special power of appointment. 5 PAGE ON WILLS § 45.2, at 601-3 (2005). The power is said to be special, or limited, because it may only be exercised for the benefit of a certain person or class. *422 Id. at 602. The will makes the donee the agent to act regarding the property. 5 PAGE ON WILLS § 45.1, at 598.
¶ 19. Also of importance is whether the power granted is mandatory or only suggestive. Farmer v. Broadhead, 230 So.2d 779, 780 (Miss.1970). The McSwain will used mandatory language"I hereby give, devise, bequeath and direct that the Judge of competent jurisdiction over the administration of my Estate make a fair contribution" to the caretakers. These words are not "merely expressive of a desire or intention on the part of the testator, and are merely advisory or precatory in character," and consequently have legal effect that can be enforced by the court. Id.
¶ 20. Even though the provision in the last will and testament provides no standard by which to determine the amount of money to be given the caretakers, such unfettered discretion is permissible in a power of appointment. The testator directs that "a fair contribution" be given. That direction is for the donee to distribute a portion of the residual funds of the estate at his complete discretion. That is permissible. The relevant provision in one last will and testament was this:
Item 6: The balance of the net income arising from the operation of my estate shall in the discretion of my said executors or the survivor of them be distributed amongst my children, or reinvested, or a part may be reinvested and a part distributed as my executors shall deem best.
Gwin v. Gwin, 116 Miss. 619, 623, 77 So. 530 (1917) (reporter's syllabus). The will did not violate any "rule of the law" and was enforceable. Gwin v. Hutton, 100 Miss. 320, 327, 56 So. 446, 447 (1911).
¶ 21. Similarly and more recently, the court found the following provision to be enforceable:
all the residue of my said estate, real, personal or mixed of whatever kind or description and wherever situated to be used by her in any way she deems fit so long as she remains unmarried. . . . If my said wife, Mrs. Esther Barnes King, should remarry then any property of my estate remaining at such remarriage shall descend to my legal heirs, that is to my said wife and my said children or to the legal heirs of such child if any of said children should be dead, in the same way as though this will and testament should not have been executed.
King v. King, 234 Miss. 862, 865-66, 108 So.2d 220, 221 (1959). When a will provides for an agent who will exercise the unlimited discretion, there is no fatal uncertainty.
¶ 22. Article IV of the McSwain last will and testament used mandatory language to create a special power of appointment for the benefit of the class consisting of caretakers at the time of the testator's death, with one person identified as a necessary member of the class. The donee received a bare or naked power, as no interest in the property was given. The recipient of the power had total discretion on setting an amount to be distributed. That approach would be enforceable under traditional power of appointment principles unless made unenforceable by the fact that the donee was the chancellor who probated the will. We now turn to that issue.
2. Judicial Exercise of Power of Appointment
¶ 23. Eunice McSwain's will arranged for a gratuity to be given those who had been of great assistance to her and who already had been compensated as formal employees. Giving these individuals "a fair contribution from the cash assets that may be remaining from my Estate" was not a gift based on a measurable *423 value of the caretakers' time. There was no formula by which objective observers might set a monetary figure. Instead, some portion of the excess funds in the estate were to be given these caretakers, amounts determined strictly by what was "fair" in light of what was in the residuary estate. McSwain had agreed with her attorney that this was the best way to distribute some part of her remaining cash the total available funds being unknowable when she executed the willto those whose known prior and unknown future assistance would so touch her life.
¶ 24. As we have indicated already, complete discretion for determining an amount of a bequest may be granted in a power of appointment. The decision both to set no specific amount and to give the authority to someone totally outside the family is understandable. Our final issue, though, is whether such shapeless discretion may properly be given a judicial officer. Chancellors are well-used to making determinations based on fairness. As to financial issues, they are constantly called upon to set alimony and child support amounts and to make allocations of marital property. All such determinations follow from equitable considerations. Those decisions have components of measuring need and ability to pay, such as for alimony and child support. Chancellors in allocating marital property examine concrete issues of the contribution of each spouse to the accumulation of the property, the degree to which each spouse used marital assets, and the value of nonmarital property in the possession of each spouse. Owen v. Owen, 928 So.2d 156, 160-61 (Miss. 2006). These decisions have standards that, even if they have varied through the years as the judicial precedents from which they come have changed, have always been subject to appellate review.
¶ 25. Our probate system, controlled partly by statute and partly by judicial precedents, imposes obligations on chancellors to make many discretionary decisions. We have no particular difficulty in accepting that a last will and testament may impose some discretionary obligations on a chancellor in order for an estate to be fully administered. The larger conceptual hurdle for concluding that a trial judge may exercise a power of appointment to make a "fair contribution" is in finding a measure by which either the chancellor or the appellate court may determine whether the decision was properly made. When a judicial officer acts, the decision is reviewable. Many decisions for chancellors are purely discretionary, but the discretion may be reviewed on appeal for abuse. The need for chancellors to make transparent decisions, i.e., explicable ones whose basis can be reviewed on appeal, is an important component underlying our multi-layer judicial processes. Robison v. Lanford, 822 So.2d 1034, 1038-39 (Miss.Ct. App.2002), aff'd, 841 So.2d 1119 (Miss. 2003).
¶ 26. We conclude that a testator may not direct a chancellor to make a totally arbitrary decision. Courts by the nature of their functions are not to be arbitrary even when parties request that they be. Had the caretakers received no payment for their services prior to probate of the will and were to be paid a fair "compensation" by the chancellor from the residual cash, the issue would be rather different. Compensation has ascertainable even if highly subjective meaning, based at least in part on the market value of the services. If "fair contribution" is in the nature of a gratuity or tip, we do not find standard restaurant tip percentages or some other such measures to provide non-arbitrary guidance since those payments are for so dissimilar and such smaller-value services.
*424 ¶ 27. We determine that Article IV provides for a totally arbitrary decision and therefore one that cannot be assigned to a judge. Having now found that the problem is the donee of the power and not the power itself, we note the obvious question of whether the power may be assigned to another. We again turn to expert authorities on these powers.
¶ 28. A power of appointment may be given to a specific individual, though that is not required. In certain situations a corporation or an attorney-in-fact has acted under a power. THOMPSON ON WILLS § 395, at 591 (3d ed. 1947). Powers may be exercised by individuals designated by a judge in situations in which no person is designated. See THOMPSON ON WILLS § 396, at 591-92. Here, McSwain granted the power to the then-unknown holder of an officethe judge who would later probate the will. Perhaps McSwain was exhibiting confidence in the abilities or impartiality of a person by way of that not-yet-identified person's position as the relevant chancellor.
¶ 29. The common law protected the special confidence entrusted by a testator to a specific donee of a power. Murdoch v. Murdoch, 97 Miss. 690, 696-97, 53 So. 684, 686-87 (1910). Courts cannot appoint others to execute the confidence entrusted to certain persons to carry out the intent of a testator when the appointed parties refuse to act or die before acting. Id.
¶ 30. One court found it to be improper for a holder of a power to delegate that power to the probate judge. Cramton v. Rutledge, 157 Ala. 141, 47 So. 214, 216 (1908). That conclusion was reached "for the obvious reason that the power conferred reposed in [the donee] a personal trust and confidence to exercise [the donee's] own judgment or discretion, which could be discharged only by [the donee] personally." Id.
¶ 31. On the other hand, absent evidence of a special trust reposed in the donee of a power, the holder of the power may delegate it:
A naked power can generally be exercised only by the donee thereof, but if coupled with an interest or with a trust can be exercised by any successor of the donee unless it is of such character as to indicate that it was given because of the confidence of the donor in the donee.
Virginia Trust Co. v. Buford, 123 Miss. 572, 597, 86 So. 356, 358 (1920). The reference in Buford to a power coupled "with a trust" refers to the donee's having a duty to exercise the power. Cady v. Lincoln, 100 Miss. 765, 777-79, 57 So. 213, 216 (1912).
¶ 32. As noted above, the right to assign a mandatory power has long been accepted in Mississippi, but the gift fails if the power is not exercised by someone:
It is only in cases of naked powers, where no estate, either legal or equitable, has been conferred upon the donee of the power, or upon the objects of its exercise, that the failure to exercise the power of appointment will defeat the estate. Bare powers are never imperative, but dependent on the will of the donee of the power. But trusts are always imperative in a court of equity.
Whenever, therefore, a trust arises, either by virtue of a legal interest in the donee of the power, or by imperative direction to perform the act as a duty, and the objects of the power are determinate, if the donee of the power does not execute it, a court of equity will not permit the estate, dependent on the discharge of such trust or imperative duty, to fail for the want of a trustee, or for his default.
*425 Gorin v. Gordon, 38 Miss. 205, 214-15 (1859).
¶ 33. As we wrestle with these principles, we remind ourselves that the overarching rule is that the intention of a testator is to be carried out if it is possible to do so. Ball v. Phelan, 94 Miss. 293, 316, 49 So. 956, 958-59 (1908). "[A]ll minor, subordinate and technical rules of construction must yield to the paramount intent" of the testator. In re Estate of Granberry, 310 So.2d 708, 711 (1975) (citing Ball, 94 Miss. at 316, 49 So. at 956)).
¶ 34. In our case, the chancellor never on the record considered Article IV to create a power of appointment. Still, the chancellor expressed relevant concern that the amount which would comply with McSwain's intent was incapable of being ascertained. The chancellor also found that making a determination of this type "could raise concerns of an ethical violation, in that it would result in leaving someone in the medical field a bequest for a job for which they have previously been adequately compensated." We find the chancellor to have been exactly correct in the conclusion regarding his own inability to exercise the unfettered discretion given him.
¶ 35. The result we reach, though, is not to declare Article IV void. Instead, we reverse and remand for additional findings on why the chancellor was chosen to exercise this authority. The testator's friend and attorney, Davis Fortenberry, testified that McSwain decided that it was not desirable to make specific monetary bequests to these individuals because of the uncertainties about her diminishing assets. An alternative was to allow someone at the time of probate to make the decisions in light of the funds available at the time that the decision needed to be made. Fortenberry told McSwain that he would not accept the responsibility, so she agreed that the chancellor would be acceptable. Based on the evidence now in the record, it would appear that McSwain's primary desire was for an impartial decision to be made. Additional evidence may be needed on remand.
¶ 36. If on remand, parol evidence indicates that the testator did repose special and nontransferable trust in the office of chancellor to perform that allocation, we would conclude that the power cannot be assigned. If, however, the language in the will should not be seen in that light, then the chancellor may delegate it to an appropriate person. For example, if McSwain wanted non-family member impartiality, wanted to name her attorney, then, after he refused, chose the position of chancellor from among various alternate means to achieve that same goal of impartiality, the office of chancellor may well not have received special confidence. The exercise of the delegated power by a similarly impartial nonjudicial officer might be proper. Those parties who have contested making any payment to the caregivers argue that allowing a substitute to be named for the chancellor would amount to a rewriting of the will. What we have already expressed reveals why a substitution may on a proper factual showing be allowed.
¶ 37. If this discretion is ultimately exercised by someone, the resulting distribution can be challenged before the chancellor for some procedural or perhaps other defects, and is also subject to appellate review should the case return.
¶ 38. Our differences with the chancellor are in a sense minor. The trial court found the provision to be ambiguous and unenforceable. We have relabeled the provision and found it to be without standards but nevertheless potentially enforceable. If the facts reveal that McSwain's reasons for donating the power to the generic judge who later would probate her *426 will was not because of special and sole confidence in that office, the power may be assigned to someone who is not a judge to whom similarly-based confidence could have been reposed.
¶ 39. We are guided by the imperative to enforce the intention of the testator if that is possible. The testator's intent was clear but her method of implementation was flawed. There may be means to adjust and proceed. We reverse and remand for examination of that possibility.
¶ 40. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.