## HARVEY ET AL. v. JOHNSON ET AL.

[71 South. 824.]

1. WILLS. *Death of life tenant. Effect. Construction of devise. Heirs. Intention of testator. Independent items. Use of language. Devise.*

Where land was devised by will to a husband for life and he died before the testatrix, there being no life estate in the property at the time of her death, it vested at once on her death in her legal heirs.

2. WILLS. *Construction of devise. Heirs.*

Where a testatrix devised by item No. 1 of her will her home-place to her husband for life and at his death to be equally divided among her "legal heirs," who under Code 1906, section 1649, would be the children of her two sisters and a brother, each taking *per stirpes* an undivided one-third interest, and by item 2 devised real and personal property to her "heirs," one share to the children of a sister, one share to the children of another sister and one share to be equally divided among her brothers, "and his children." In such case the words "legal heirs," as used in the first item, having a fixed legal significance, should be so construed unless it was manifest from the entire will that such was not the purpose of the testatrix, and the items considered both independently and as a whole, did not show any intent that the persons incorrectly named as heirs in item number 2 should take in place of the legal heirs as fixed by statute in item No. 1, the word "heirs" in item No. 2. should be treated as surplusage.

3. WILLS. *Construction. Intention of testator.*

In all wills the cardinal rule of construction is to ascertain the intention of the testator.

4. SAME.

Where the terms of a will are expressed in words of clear and unambiguous meaning, there is no room to resort to other parts or items of it for construction.

5. SAME.

It is only in cases of ambiguous or doubtful meaning in the construction of one item of a will where resort should be had to the whole will in order to ascertain clearly the intentions of the testator.

6. SAME.

In seeking for the intention of a testator, words are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another can be collected. When there is no ambiguity in the words, there is no room for interpretation.

7. SAME.

It is always the safest mode of construction to adhere to the words of the instrument, without considering either circumstance arising *aliunde*, or calculations that may be made as to the amount of the property or the consequence which may flow from any particular construction.

8. WILLS. *Construction. Cutting down. Devise.*

When an interest or estate is given in one clause of a will in clear and decisive terms, it cannot be taken away or cut down by raising a doubt upon the meaning and application of a subsequent clause, nor by inference therefrom nor by any subsequent words that are not as clear and decisive as the words giving the interest or estate. .

APPEAL from the chancery court of Oktibbeha county. HON. J. Q. ROBINS, Chancellor.

Petition by W. H. Reynolds, executor of the will of Mary Martha Wiggs, deceased, for construction of the will in which proceeding Marguret Johnson and others were parties. From a decree constructing the will, Wm. Henry Harvey appeals.

The facts are fully stated in the opinion of the court.

*Green & Green,* for appellant.

*W. W. Magruder,* for appellees.

SYKES, J., delivered the opinion of the court.

This is an appeal from the decree of the chancery court of Oktibbeha county construing the last will and testament of Mrs. M. M. Wiggs. The will reads:

"Starkville, Miss., July 29th, 1910.

"I, Mary Martha Wiggs, being of sound and disposing mind, and having in view the uncertainty of life, do

make, publish and declare this my last will and testament.

"1st. I give my husband, Capt. J. A. Wiggs, the land known as my home place upon which I now reside, to have and to hold for his natural lifetime, and at his death same to be equally divided among my legal heirs.

"2nd. I give to my heirs the following described property, to wit: The land known as my Chapel Hill place, the land known as my Outlaw place, and all my personal and mixed property to be divided as follows: One share to the children of my sister, Margaret Spencer, one share to the children of my sister Ella Harvey, and one share to be equally divided between my brother Dorsey Outlaw and his children.

"3rd. All cash on hand at the time of my death to be used to defray my funeral expenses and balance to be devoted to the purchase of a monument each for myself and my mother.

"4th. I appoint Mr. W. H. Reynolds the executor of my will, and direct that he be not required to give any bond or any kind of security.

"[Signed] MARY M. WIGGS.

"Signed in our presence and declared by signers as her will and we sign in her presence.

"[Signed] J. A. CAROTHERS.

"C. E. GAY."

This will was construed by the learned chancellor upon the petition of the executor, W. H. Reynolds, and this appeal is only from the construction of item 1. The will was made on July 29, 1910, and Mrs. Wiggs died on or about June 10, 1913, or about two years and eleven months after making the will. In item 1 of the will she devised the land known as her home place, which was decidedly the most valuable real estate owned by her, to her husband, Capt. J. A. Wiggs, for life. Capt. Wiggs departed this life before the testatrix; therefore at the time of her death there was no life estate in the property

devised in this item, and it vested at once in her "legal heirs."

The question relating to this item is whether or not, when considered independently of the other items of the will, the intention of the testatrix is perfectly plain from a consideration of this item alone; and, second, whether or not, when considered with the other items of the will, the words "legal heirs," as used in item 1, is governed by those named as her heirs in item 2. In other words, the first question to be decided by this court is whether or not the legal heirs of Mrs. Wiggs mentioned in item 1 are her legal heirs, as is contemplated by section 1649 of the Code of 1906, or whether by the devises and bequests of item 2 those named as purporting to be her heirs in item 2 are decisive of and govern those who are her legal heirs in item 1. When considered alone, we have no hesitancy in saying that item 1 is perfectly plain and meant to devise the land known as her home place to her legal heirs as contemplated by said section of the Code above named, and that it was her intention clearly expressed in this item of the will that these heirs take accordingly to the statute, namely, per stirpes, her living brother, Dorsey Outlaw, taking a one-third undivided interest in her home place, and the children of her sister Ella Harvey receiving an undivided one-third interest to be equally divided among them, and the children of her sister Margaret Spencer likewise receiving an undivided one-third interest to be equally divided among them.

In item 2, however, of this will she devises and bequeathes to her heirs certain real and personal property, and then names as her heirs the children of her sisters, Margaret Spencer and Ella Harvey, and her brother, Dorsey Outlaw, and his children. All of these are the heirs of Mrs. Wiggs, except the three children of Dorsey Outlaw, who, of course, are not heirs. The question then is: Shall the court construe item 1, which is perfectly plain and unambiguous when considered alone, and give to the meaning of "legal heirs" the same meaning as

the testatrix apparently gives to the word "heirs" in item 2? The learned chancellor below in a very lucid and clear opinion so held, and it is only after a most careful consideration and examination of authorities that we are constrained to differ with him. The court recognizes that the testatrix was not learned in the law, and, while to those learned in the law the terms "heirs" and "legal heirs" have practically the same signficance, at the same time, in gathering the intention of the testatrix from the entire will considered as a whole, we believe that she meant to use the term "legal heirs" in a different manner in item 1 than she used the term "heirs" in item 2. This contention is borne out by the fact that she was devising different plantations and also different estates therein, and in item 2 was devising both real and personal property to vest immediately, while in item 1 she was devising only real property, first a life estate therein, and then a remainder in fee in her "legal heirs." We believe that the true interpretation of item 2, when considered in connection with item 1, is that Mrs. Wiggs was rather doubtful as to who her heirs might be, and that, in order to put the property devised in item 2 beyond all question, she expressly named those whom she wanted to have this property specifically. The word "heirs" in item 2 can very well be treated as surplusage.

By item 1, when considered either independently or together with the other items of the will, we think it perfectly manifest that she meant to devise this property according to the laws of descent of the state of Mississippi. The learned chancellor in his opinion, while holding that the intention of the testatrix as expressed in item 1, when considered alone was perfectly manifest and free from doubt, yet held that item 2, which incorrectly named certain people as her heirs, should control and govern the term "legal heirs" in item 1. In this we cannot agree with him. We do not think that an item which incorrectly uses a term should control and govern an unambiguous and clear item which correctly uses legal

phraseology. An item which is incorrect and of doubtful construction should never be considered as governing the phrases of an independent item which is perfectly clear and unambiguous when considered alone. However, since the testatrix was dealing with different property and altogether in a different manner in each one of these items, we think the proper construction of them is to construe them independently, unless these independent constructions, when considered together with all of the provisions of the will, are utterly contradictory, and show that the construction of either one of the other items must be incorrect. In considering these items first independently, as we have above, and then in connection with the entire will as a whole, we see nothing contradictory or ambiguous in our construction of the same and hold that it was the intention of Mrs. Wiggs, by the use of the words "legal heirs" in item 1, in connection with the entire clause of item 1, to devise this property as above stated according to the laws of descent of the state of Mississippi after the death of Capt. Wiggs.

We think the learned chancellor correctly construed item 2 and the rest of the items of the will.

The words "legal heirs," as used in item 1, have a fixed legal significance, and should be so construed, unless it is clearly manifest from an examination of the entire will that such was not the purpose of the testatrix. *Love v. Buchanan,* 40 Miss. 758; *Irvine v. Newlin,* 63 Miss. 192.

"In seeking for the intention, words are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another can be collected. . . . When there is no ambiguity in the words, there is no room for interpretation." *Vannerson v. Culbertson,* 10 Smedes & M. 150.

"It is always the safest mode of construction to adhere to the words of the instrument, without considering either circumstances arising *aliunde,* or calculations that may be made as to the amount of the property, or the

consequences which may flow from any particular construction." *Currie* v. *Murphy,* 35 Miss. 473.

In the case of *Dunlap* v. *Fant,* 74 Miss. 197, 20 So. 874, there was a devise of a life estate to the wife, and upon her death "to my lawful heirs share and share alike." These lawful heirs were determined by the statute of descent and distribution.

It is our opinion that the testatrix, as above stated, meant to devise this property according to the laws of descent and distribution, which necessarily would make these heirs inherit *per stirpes,* as above stated, and not *per capita,* as decided by the learned chancellor.

In the case of *Branton* v. *Buckley et al.,* 99 Miss. 116, 54 So. 850, the court held that a devise to the wife for life with remainder ("share and share alike to my brothers and sisters") gave the brothers and sisters and the representatives of those deceased brothers and sisters the property devised *per stirpes.* It is clear that a devise to the testatrix's legal heirs was intended by her to be a devise to those who would take according to the statute of descent in case she died intestate. In the case of *Irvine* v. *Newlin,* 63 Miss. 192, Judge Campbell in part says:

"The proposition deducible from the authorities is that *prima facie* the word 'heir' is to be taken in its technical sense, unless there is in the will a plain demonstration that the testator used it in a different sense, in which case effect will be given to his intention. . . . The third clause of the will is not helped by the preceding or any other. It is independent, and must be interpreted by its own terms alone."

In the case at bar we think that item 1 of Mrs. Wigg's will is independent, and, if perfectly plain and unambiguous, should be construed by itself. We think further that our construction of the same in no way conflicts with item 2; that it is perfectly manifest that the testatrix herself recognized that her legal heirs in item 1 might per-

.haps be different from those whom she incorrectly terms her heirs in item 2, and for this reason, in order to devise and bequeath the property in item 2 exactly according to her intentions, she specifically names the objects of her bounty in this item and the amount which they are to receive. Where two clauses of a will create an estate in several devises named, and they are not united grammatically by the expression of a common purpose, each clause must be considered and construed separately, and without relation to the other, even though the testator may have had the same intention in regard to both.

"Where an interest or estate is given in one clause of a will in clear and decisive terms, it cannot be taken away or cut down by raising a doubt upon the meaning and application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words giving the interest or estate." *Bailey* v. *Sanger,* 108 Ind. 264, 9 N. E. 159; *U. S. Fidelity & Guaranty Co.* v. *Douglas,* 134 Ky. 375, 120 S. W. 328, 20 Ann. Cas. 993; *Wood* v. *Polk,* 12 Heisk. (Tenn.) 200.

In all wills the cardinal rule of construction is, .of course, to ascertain the intention of the testator. Where however, the terms of a will are expressed in words of clear and unambiguous meaning, there is no room to resort to other parts or items of it for construction. It is only in cases of ambiguous or doubtful meaning in the construction of one item of a will where resort should be had to the whole will in order to ascertain clearly the intention of the testator. The following authorities sustain the construction of the court that the property devised in item 1 was *per stirpes,* and not *per capita. Cummings* v. *Cummings,* 146 Mass. 501, 16 N. E. 401; *Kelley* **v.** *Vigas,* 112 Ill. 242, 54 Am. Rep. 235; *Cook* v. *Catlin,* 25 Conn. 387. For other authorities sustaining this construction we refer to the able briefs of counsel both for appellants and appellees.

That part of the decree of the court below relating to item 1 is therefore reversed, and the case remanded to be proceeded with in accordance with this opinion.

*Reversed and remanded.*