611 So.2d 862 (1992)
ESTATE OF Joe Eron BLOUNT: Eva Blount Penick, Individually and as Executrix; Mary Blount Walker, Dorothy Blount Funderburke and James Blount
v.
Sandra W. PAPPS, as Conservator of Ava Frances Blount.
No. 90-CA-1001.
Supreme Court of Mississippi.
December 3, 1992.
Rehearing Denied February 11, 1993.
*863 John P. Fox, Houston, for appellant.
Trent L. Howell, Water Valley, for appellee.
Before ROY NOBLE LEE, C.J., and BANKS and McRAE, JJ.
BANKS, Justice, for the Court:
Here we are urged to overturn the lower court's construction of a testator's will which found that the testator intended to leave his wife fee simple title in all his monetary assets, note payments, and all other personal property to the exclusion of the testator's children by a former marriage. Finding that the chancellor applied the law appropriately and had a substantial basis in the evidence for his findings of fact we affirm.

I.
This case came before this Court from the Yalobusha County Chancery Court. There, Sandra W. Papps, Conservator of the widow, Ava Frances Blount, filed a petition seeking construction of the will of her deceased husband, Joe Blount. Ava sought to have the court construe that Blount left her a fee simple title to all his personal property. Blount's natural children, Ava's stepchildren, along with the First Baptist Church, filed a response, contending that Ava received only a life estate to the personal property and that upon her death, the estate is to pass to them. The pertinent language in the will is:
Paragraph 3: I then will, devise and bequeath to my wife Ava Francis Blount, a life estate in all of the real property that I own at my demise, for my wife to have the use, rents and profits from all of my real property. I will, give and devise unto my wife, ... all of my personal property of every kind whatsoever and wheresoever located to have and use and dispose of as she sees fit.
Paragraph 4: Then at the termination of the life estate of my wife, ... I will, give, devise and bequeath unto our children: Mary Blount Walker, Dorothy Nell Blount Funderburke, and Eva Joe Blount Penick, a one-fourth interest each of my real, personal and mixed property, whatsoever and wheresoever located, to share and share alike.
Paragraph 5: I then, will, devise and bequeath unto Turkey Creek Church, Calhoun County, Mississippi, a one-eighth interest, and the First Baptist Church, Water Valley, Mississippi, a one-eighth interest of my property, real, personal and mixed, whatsoever and wheresoever located.
The chancellor found that Ava took a fee simple title in and to all of Blount's money, note payments, and all other personal property to the exclusion of the children of his first marriage and the churches, subject only to the payment of debts and administrative fees and expenses. Additionally, the chancellor found portions of Blount's will, namely paragraphs 4 and 5, indefinite and unclear because they conflicted with the clear, decisive and unambiguous language of paragraph 3. Moreover, the chancellor held:
Under paragraph 3 the decedent devised a life estate to his wife, Ava ... in and to all of his real property. In the second sentence in paragraph 3, he then bequeathed all of his personal property, which would be the balance of his estate, to his wife, Ava to have and use and dispose of as she sees fit. The second sentence of paragraph 3 ... was an absolute bequest to Ava ... of all of the decedent's personal property in fee simple *864 absolute, which would include everything he owned at the time of his death, including his interest in the promissory note executed by the Phillips. And, as there was no real property, with the exception of mineral interests, owned by [Blount] at the time of his death passing under the terms of [Blount's] will, the first sentence of paragraph 3 is of no effect.
The chancellor further held that paragraph 4 purported to give three of Blount's children a remainder interest in and to Blount's personal property, as well as his real property, which it could not do since Blount had already made an absolute gift of his personal property to Ava instead of a life estate.
Aggrieved, Eva Blount Penick, as executrix, along with the other children filed this appeal. The two churches have not joined in the appeal. The appellants raise the following issues:
I. Whether the intent of the testator has been ascertained and given effect by the Court with the Will construed (sic) which is most consistent with the testator's intent.
II. Whether the intent of the testator should control where the Will is ambiguous and the attorney that drafted the Will testified unequivocally that the intent of the testator was to create a life estate in his widow with the remainder to his natural children and his churches.
III. Whether the Court should adopt the construction that will render a charitable gift valid.
IV. In the alternative, whether the beneficiary who took benefits under a mutual will, should be estopped to repudiate the contract to leave the residue of the estate to the natural children and churches of the testator.

II.
Joe Blount was twice married. To his first union with Lillian Blount, six children were born; two are deceased and the remaining four are appellants in this case. In 1946, Joe divorced his first wife and shortly thereafter married Ava. There were no children born to this second marriage.
The Blounts owned a farm bordering on the Sharkey and Yazoo County line where they resided. In July 1960, Joe and Ava purchased fifty acres as tenants in common in Yalobusha County. On October 17, 1978, Joe executed a will which was attested by Ben Horan, the drafting attorney, and Charlotte Grass, Horan's secretary.
At trial, Grass testified that she only remembered bits and pieces of the execution of the will. She remembered that both Joe and Ava were present, but could not remember the actual execution of the will itself. Likewise, Horan's memory escaped him on certain matters. He was unable to recall whether Ava was present for the execution, but remembered that Joe's intent was to leave Ava the real and personal property during her life time with the property passing to the named beneficiaries at the termination of her life.
On December 29, 1978, the Blounts sold their farm to John F. Phillips, III and Chatham H. Phillips. As part of the consideration, the Blounts received a promissory note in the original principal amount of $293,270, bearing interest at the rate of eight (8%) percent per annum, and being payable in fifteen annual installments. The first installment was to be in the amount of $32,458.78 with the remaining successive payments in the amount of $34,258.06. The note was secured by a deed of trust on the farm.
The remaining assets of the Blount estate included $65,000 in certificates of deposit. The Blount's real property consisted of a house and lot located on one-and-one-half (1.5) acres of land. The Blounts held this land as tenants by the entirety with the right of survivorship by deed executed December 14, 1983, five years after the will in question. After Joe's death on February 3, 1989, Ava Blount remained on the property. The house was the only real property left at the time the Blounts executed the 1983 deed. All other property had been previously sold. By the time Joe died, Ava had suffered a stroke and was unable to *865 serve as executrix as appointed by Blount. Consequently, Eva Blount, one of Joe's daughters, was appointed alternate executrix and Sandra Papps, Ava's relative by marriage, was appointed conservator.

III.

A.
As an initial matter, appellants contend that the chancellor's ruling overlooked two of the three dispositive paragraphs contained in the will, as well as Horan's testimony. According to the appellants, the most reasonable construction to effectuate Joe's intent and to give effect to all of the will's provisions would be to give Ava a life estate in the personal property. They contend that to do otherwise would ignore two paragraphs of the will, as well as oust the testator's natural children.
Ava asserts that the chancellor was correct in his findings that Joe bequeathed to her an absolute fee simple title in all his personal property in paragraph three; and that the less clear, less decisive, and ambiguous language contained in paragraphs four and five did not reduce her bequest to merely a life estate. The chancellor noted in his opinion that the life estate reference in paragraph three was limited to Blount's real property.
The appellants maintain that where there are inconsistent provisions in a will, or where the language in one part of a will is subject to a dual construction, the prevailing interpretation should be the one most consistent with the intent of the testator as ascertained by other provisions in the will. "The language used in a single clause or sentence should not control as against the evident purpose and intention of the testator as shown by the whole will." 57 Am. Jur. 735, Wills, Par. 1137. To support their proposition that less than a fee simple interest was granted by testamentary clauses, appellants cite Selig v. Trost, 110 Miss. 584, 70 So. 699 (1916). In Selig, the pertinent provisions of the decedent's will read:

First. I will and bequeath all the property of which I may die possessed, real, personal and mixed to my beloved wife, Crescentia, to use, enjoy and control the same and the proceeds thereof, with the full power to sell, mortgage and dispose of the same and to make good and perfect title thereto.

Second. After the death of my said wife, I desire and will that what remains of my said property shall be divided equally between my children, share and share alike; the share of anyone who may be dead to go to his or her heirs. In no wise however to be construed to limit the power of my said wife over the said property or to prevent my said wife from selling or disposing of the same, or mortgaging the same or from using and enjoying the same or the proceeds thereof.
After Selig died, his wife devised the property she received. The Court was called upon to determine if Mrs. Selig had the power to devise the property. In viewing the will as a whole, the court found that Selig did not intend to vest his wife with power to dispose of the property by will, but that he merely intended to grant his wife the use and enjoyment of the property during her life time, with power to mortgage or sell it. At her death, however, any portion thereof that had not been sold by her was to be divided equally among his children.
There, the appellees argued that the first clause of Selig's will created a fee simple estate in Mrs. Selig and that the limitation over after her death to the children of Selig was void. The Court disposed of the appellees position by asserting that appellees mistakenly relied upon the theory that the two clauses of the will could be separately construed and by ignoring the whole doctrine of executory devises. 70 So. at 699.
We find Selig distinguishable from the instant case. The language there was construed to create a life estate to Mrs. Selig in all of Selig's property by reference to the remainder distribution clause. Here, the language in paragraph three explicitly creates a life estate in real property and fails to do so with regard to Blount's personal property.
Appellants also rely upon language in the will in Spiva v. Coleman, 122 Miss. *866 142, 150, 84 So. 144 (1920). There, the pertinent language stated:
Article 2. I will and bequeath all the property real, personal or mixed of every description whatever ... to my beloved wife, Priscilla Coleman, to have, use, dispose of or to sell and convey absolutely, if she so desires.
Article 3. That at the death of my wife, said Priscilla Coleman, if there shall remain any of the said property or proceeds thereof which I shall die seized and possessed undisposed of by said Priscilla Coleman before her death then it is my Will that one-half of my said property or the proceeds thereof I may die seized and possessed undisposed of by said wife Priscilla before her death shall be divided among my sisters, nephews and nieces as follows, to wit ...
In Spiva, the Court was asked to ascertain whether this language created a fee simple in the decedent's wife or merely a life estate with power to dispose of the property during her lifetime. Applying the principles asserted in Selig, the Court held that the will merely created a life estate in Mrs. Coleman to use and enjoy the property during her lifetime; the undisposed property to go to the devisees declared in the will. 122 Miss. at 151, 84 So. at 145. Spiva is distinguishable from the case at bar for the same reasons that differentiates Selig.
It is elemental that when construing the will of a testator, the function of the chancellor, as well as that of this Court, is to determine and respect the intent of the testator. Matter of Estate of Dedeaux, 584 So.2d 419, 421 (Miss. 1991) citing Yeates v. Box, 198 Miss. 602, 609, 22 So.2d 411, 413 (1945), Stovall v. Stovall, 360 So.2d 679, 681 (Miss. 1978), In the Matter of the Estate of Vick, 557 So.2d 760, 765 (Miss. 1989). In determining the testator's intent, in the absence of ambiguity, this Court is limited to the `four corners' of the will itself. Tinnin v. First Bank of Mississippi, 502 So.2d 659, 663 (Miss. 1987); Matter of Estate of Dedeaux, 584 So.2d at 421; Cockrell v. Jones, 275 So.2d 105, 107 (Miss. 1973). The four cardinal rules of construction are:
"First, the prime inquiry is the intention of the testatrix ...
"Second, the law favors the vesting of the estates at the earliest possible moment ...
"Third, in the absence of a clear intent to the contrary, that construction should be adopted which will result in a just and reasonable disposition of the property ...
"Fourth, life tenancies are not favored."
In Raworth's Estate, 211 Miss. 780, 785, 52 So.2d 661, 662-663 (1951).
The chancellor in the case at bar found the dispositive case to be Cockrell v. Jones. There, this Court was called upon to construe the last will and testament of Willie Winston. The dispute was between Winston's widow, Estella, and Winston's natural daughter, Hattie. Hattie argued that Willie left Estella a life estate and that she was to receive the remainder estate at Estella's death. Cockrell, 275 So.2d at 105. The Winstons prepared a joint will but the will was solely executed by Willie. The pertinent language is:
Item II: The survivor shall take, under this will, all of the estate and all of the property ... of whatsoever kind and nature and wheresoever it may be situated, be it real, personal or mixed, absolutely and forever.

Item III. At the death of the survivor, the remainder of our estates shall go to our daughter, Hattie ... absolutely and forever.
In construing of Willie's will, the Court considered language in Harvey v. Johnson, 111 Miss. 566, 71 So. 824 (1916):
"Where an interest or estate is given in one clause of a will in clear and decisive terms, it cannot be taken away or cut down by raising a doubt upon the meaning and application of a subsequent clause, not by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words giving the interest or estate." 111 Miss. at 573, 71 So. at 826.
The Court in Cockrell held, that under the authority of Harvey and Raworth, the chancellor correctly determined that Item *867 II of Willie's will vested a fee simple absolute in Estella Winston. Cockrell, 275 So.2d at 107.
The language utilized by Joe Blount with respect to personal property is not less clear than that found "clear and decisive" in Harvey and Cockrell, and the fact that he used life estate in one place and not another in the same paragraph speaks loudly. Its implication is buttressed by the second and fourth principles of will construction set forth above, early vesting and avoidance of life tenancies. Operating together these rules and facts present a substantial hurdle for appellants.
The rule in this state concerning ambiguities in the language of a will is that parol evidence is admissible for the purpose of determining the intent of the testator. Ross v. Brasell, 511 So.2d 492, 494 (Miss. 1987); Tinnin v. First Bank of Mississippi, 502 So.2d 659, 670 (Miss. 1987); Maupin v. Estate of Perry, 396 So.2d 613, 615 (Miss. 1981); Strickland v. Delta Investment Co., 163 Miss. 772, 781, 137 So. 734, 736 (1931). On the other hand, if the will is unambiguous and the intent of the testator can be discerned from the face of the document, the admission of such evidence is improper. See e.g. Stovall v. Stovall, 360 So.2d 679, 681 (Miss. 1978); Seal v. Seal, 312 So.2d 19, 21 (Miss. 1975); In re Estate of Granberry, 310 So.2d 708, 710-712 (Miss. 1975).
To the extent that this will is made ambiguous by subsequent clauses purporting to devise a remainder in personalty, which may have been devised in fee simple earlier, the chancellor was justified in admitting parol evidence. He committed no manifest error in resolving conflicts in that evidence in favor of his finding that Joe intended to create a fee simple estate in Ava. Extrinsic evidence adduced at trial bearing on the issue of intent was scant. It showed that Ava was totally dependent on Joe, who was the dominant of the two. All of Joe's children had reached the majority age. The bulk of the real property had been converted to personalty within two months of the execution of the will, supporting an inference that the sale was contemplated at the time of the will. The homestead, still subject to the life estate at that time, was not removed from the potential estate until years later. The direct testimony of the drafting attorney was unsupported by notes and somewhat, if mildly, impeached by the attorney's relationship with the controversy. As shown below, the chancellor did not abuse his discretion in refusing to credit this testimony. We cannot say that the evidence, as a whole, is sufficiently strong to dictate a finding that Joe's intent was other than that deduced from his failure to use the term life estate with respect to the personal property, where that term was used with respect to real property in the same paragraph.
The chancellor did not err in following the principle enunciated in Harvey. In reviewing findings of fact made by a chancellor, this Court will not reverse unless we find that the chancellor committed manifest error. Collins By Smith v. McMurry, 539 So.2d 127, 129 (Miss. 1989). Here, even if parole evidence is viewed, it is not so compelling as to militate against the chancellor's conclusion. It follows that the chancellor was not manifestly in error and must be affirmed.

B.
Appellants contend that the chancellor should have been bound by the uncontradicted testimony of Horan, the attorney who drafted the will, to ascertain Joe's intent because the will was ambiguous. Ava argues that Horan's testimony should not have been conclusive on the question of Joe's intent for several reasons. First, she maintains that Horan prefaced his testimony with a statement that it was based on his memory as opposed to contemporaneous notes or other recordings. Second, Horan was not a disinterested witness because he was the drafter of the ambiguous will and because, initially, he represented Eva Blount executrix, on the probate of the will in question, as well as, on the administration of the estate. He was subsequently replaced by the present attorney.
*868 Ava states correctly that the credibility of Horan and the weight to be assigned his testimony are for the chancellor to decide as he did in this case. See gen. Collins By Smith v. McMurry, 539 So.2d 127 (Miss. 1989) We agree with the appellee and find appellants' contention on this point meritless. The chancellor was not clearly and manifestly wrong in not finding Horan's testimony conclusive on the question of Blount's intent.

IV.
Appellants urge this Court to adopt the construction of the will that would sustain the charitable gifts to Turkey Creek Church and the First Baptist Church on the basis that charitable trusts are favored and should be enforced whenever possible. Appellants contend that if we construe the will as did the chancellor, the charitable gift will be rendered invalid, negating Joe's intent to effectuate all provisions of the will. Ava concedes that appellants are correct in relying on Tinnin v. First Bank of Mississippi for the proposition that where there are two possible constructions of a will, one of which will render a charitable gift valid and the other of which will cause it to fail, the construction should be adopted which will render the gift valid. 502 So.2d at 670.
The problem is that the devise to the churches was not invalid but merely ineffectual at the time of death because of subsequent events. As to the real property, this is not an instance where a construction causes a devise to fail for illegality. It is an instance wherein a part of the devise fails because subsequent actions by the testator caused the subject of the devise to no longer exist. Even the personal property owned by Joe could have passed to the children and the churches by virtue of this will had Ava predeceased Joe. More than that, however, it is the Harvey principle which dictates that we not give effect to subsequent clauses limiting a clear devise of an estate in fee simple to the personal property.

V.
Appellants contend that the wills between their father and stepmother were mutual and that Ava should be estopped from repudiating the mutual will. Ava did not address this issue in depth but merely contended that the appellants did not present any proof at trial of any such contract. The evidence was to the contrary. Blount's will was executed on October 17, 1978; Ava's on January 2, 1979. Ava amended her will at least twice in later years. Furthermore, Ava's will was never entered into evidence and is not part of the record. Most importantly, because the issue was not raised at trial, Ava correctly asserts that it is improper to raise it on appeal. Thus, we will not consider this issue here. Watson v. Lillard, 483 So.2d 1330 (Miss. 1986).
For the foregoing reasons, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, SULLIVAN, PITTMAN, McRAE and ROBERTS, JJ., concur.
HAWKINS, P.J., not participating.